Law Office of
HERNANDEZ & HAMILTON, PC
The Johnson House Offices
455 West Paseo Redondo
Tucson, Arizona 85701-8254
CLAY HERNANDEZ (AZ Bar No. 010917)
Email: *Clay@Hernandez-Hamilton.com*
JOSHUA F. HAMILTON (AZ Bar No. 028084)
Email: *Josh@Hernandez-Hamilton.com*
Telephone: (520) 882-8823
Fax: (520) 882-8414
Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>             Plaintiff,<br><br>  vs.<br><br>Rafael Gallego et al.,<br><br>          Defendant. | No.  18-CR-01537-TUC-RM(BPV)<br><br>**EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER CONCERNING SEARCH WARRANT EXECUTED ON AUGUST 8, 2018 & EMERGENCY MOTION FOR APPOINTMENT OF SPECIAL MASTER** |

The defendant, through his attorneys undersigned, hereby moves for an emergency Temporary Restraining Order ("TRO") concerning the search warrant executed at the offices of the Gallego Law Firm on August 8, 2018.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.     INTRODUCTION

On August 8, 2018, the government raided attorney Rafael Gallego's law office and seized a large number of documents, including several active case files

and computers belonging to clients of Mr. Gallego.  Counsel undersigned spoke

with the government and requested the seized materials remain untouched until an

independent review could be conducted to determine whether any non-

discoverable (*i.e.* subject to the attorney-client privilege) were contained therein.

The government indicated it would not delay reviewing the seized materials and

would decide for itself which documents were privileged and which were not, in

accordance with a procedure "approved by Washington."   The government

indicated it would deviate from that procedure absent a court order.[1]

Accordingly, Mr. Gallego brings this emergency motion requesting that the

Court order the following in an expedited ruling:

(1) That all seized items be made available to the defense to review all documents in the first instance and that all responsive, non-privileged items be disclosed to the government;

(2) That a Special Master be appointed to oversee the defense review of the seized documents;

(3) That the government be temporarily restrained from reviewing any of the seized documents until this Court rules on this motion; and

(4) That the search warrant(s), search warrant inventor(ies), and other court documents pertaining to the search remain under seal until the Court rules on this motion.[2]

---

[1] *See infra* for discussion of the Department of Justice ("DOJ") practice of using a so-called "taint team" to review seized attorney materials.

[2] The U.S. Attorney's Office for the Western District of Texas took it upon itself to issue a "press release" to the local news media here in Tucson, which has led to

Mr. Gallego has been a member of the State Bar of Arizona for nearly three decades.  He has does have a prior disciplinary history owing to a substance abuse issue, long since resolved, and has been a member in good standing ever since. The government elected to have Mr. Gallego arrested outside the Pima County Superior Court on his way to Day Two of an active jury trial before the Honorable Javier Chon-Lopez.[3]  Federal agents used a battering ram on the unlocked doors of his law office and detained his legal secretary at gunpoint.  A full tactical team hauled numerous cases files, work computers, and hard drives out of his office. The government's unreasonable search and seizure of these materials carries a substantial risk of infringing upon the attorney-client privilege and attorney-work product doctrine.  There is no question that the government is now in possession of a significant amount of privileged information, much of which is wholly unrelated to its current investigation of Mr. Gallego.

For these reasons, Mr. Gallego moves for an emergency TRO to enjoin the government from reviewing any of the seized materials seized from his law office to allow for an independent review for privilege and responsiveness.  It is further requested that this Court appoint a Special Master to review the items seized in the first instance for privilege and responsiveness to the search warrants.  Finally, the

---

extensive media attention to this case and a focus upon the court documents themselves.

[3] Judge Chon-Lopez had to declare a mistrial as a result.

defense requests that the warrant(s) and their inventor(ies) be kept under seal to protect the privacy interests of Mr. Gallego and the third-parties referenced in the seized materials. Given the high-profile nature of this prosecution, owing in part to the government's unnecessarily dramatic arrest and press release to the media, releasing these court documents publicly would subject Mr. Gallego and those third-parties referenced therein to unnecessary and undue harassment from the media and the public.

## II.     STATEMENT OF FACTS

Mr. Gallego has been an attorney in Arizona for nearly 30 years. He was first admitted to practice in 1991 and his license is in good standing. He was a Deputy Pima County Attorney until 1993 and been in private practice as a criminal defense attorney ever since. In the course of his practice, he represents clients in state and federal prosecutions. He has used various means to engage in privileged communications with his clients, including but not limited to letters, emails, telephone calls, and text messages. Mr. Gallego also has used both paper and electronic files to document and facilitate his legal work on behalf of his clients. It goes without saying that these materials contain highly-sensitive privileged and confidential information.

On the morning of August 8, 2018, federal agents arrested Mr. Gallego on his way into the Pima County Superior Court.[4]  Shortly thereafter, a tactical team raided his law office, located at 1016 East Pennsylvania Street in the Tucson. Despite his law office being open to the public and during business hours, agents utilized a battering ram on the front doors.  The battering ram proved ineffective on account of the door being completely unlocked.  Tactical agents armed with assault rifles stormed in and, at gunpoint, ordered Mr. Gallego's legal secretary to the ground.  She was handcuffed and removed from the building to sit, shackled, for more than 90 minutes.  Agents hauled off numerous materials during the search, including documents, records, and communications protected by the attorney-client privilege and/or the attorney-work product doctrine, many of which pertain to clients with pending federal cases.  Agents also seized Mr. Gallego's cellular device.  In addition to privileged materials, the government seized some documents and communications that are highly personal and private in nature.  For example, agents seized entire computer terminals, which likely contain personal communications between Mr. Gallego and his wife, family photos, medical documents, etc., that are not relevant to the investigation and are particularly personal and private.

---

[4]It remains unclear why he was not simply summonsed into District Court, as is common in situations where, as here, a defendant will gladly voluntarily present themselves in court to answer the charges levied against him/her.

## III.    LAW AND ARGUMENT

Law office searches raise special concerns that requires a need for heightened care, given that law offices often contain privileged attorney-client materials and work product.  *See United States v. Derman*, 211 F.3d 175, 181 (1st Cir. 2000) (collecting cases); *DeMassa v. Nunez*, 770 F.2d 1505 (9th Cir. 1985) (enhanced privacy interest underlying attorney-client with relationship warrants heightened degree of judicial protection and supervision when law offices are subject of search); *see also*; *Klitzman v. Krut*, 744 F.2d 955, 958 (3d Cir. 1984); *Nat'l City Trading Corp. v. United States*, 635 F.2d 1020, 1026 (2d Cir. 1980).

In recognition of these concerns, the United States Attorney's Manual ("USAM") sets forth specific procedures for conducting such a search.  USAM § 9-13.220; USAM § 9-13.420.  One such procedure is to appoint a Special Master to review documents seized from a law office.  *See* USAM § 9-13.420(F); *see also United States v. Stewart*, 02-CR-396 (JGK), 2002 WL 1300059, \*4 (S.D.N.Y. June 11, 2002).  In this case, given the sensitive nature of the seized materials and the fact that many of the materials are privileged, protected by the attorney-work product doctrine, and/or concern confidential matters unrelated to the government's case, this Court should grant the motion and allow either Mr. Gallego's defense attorneys or a Special Master (or both) conduct the initial review of the seized materials.

1
2
3
**A. The Appointment of a Special Master, Generally**

Case law supports the appointment of a Special Master to supervise the

4
5
review and/or conduct an independent review of materials seized from lawyers

6
7
and/or law firms to preserve the attorney-client privilege.  In *Stewart*, the FBI and

the NYPD executed a warrant at the defendant's law office in Manhattan.  2002

8
9
10
WL 1300059.  The search was conducted by a special team of investigators that

had been walled-off from the prosecution team in order to prevent the prosecution

11
from viewing privileged materials or learning any privileged information that was

12
13
uncovered on-site during the search.  *Id*. at *3.  The search was limited to areas

14
used by the defendant, and materials from offices of other attorneys were not

15
searched.  *Id*.  Among the items seized from the defendant were:

16
17
18
19
20
21
> [C]opies of hard drives of the computer in the common
> area, the computer in the paralegal's office, and the
> networking hardware from the common area, all of which
> had also been used to perform legal work for clients of
> other attorneys in the suite or for clients of the defendant
> who were not identified in the warrant and who likely
> have no relation to this case.

22
23
24
*Id*.  The legal question presented to the District Court was whether "a Special

Master [should] perform an initial review of the seized materials…or [whether] a

25
government privilege team [should] do it, as the government proposes."  *Id.* at *4.

26
27
28
The District Court rejected the government's proposal, appointed a Special Master

to review the documents seized from the law office, and granted the Special Master

authority to determine responsiveness, privilege issues, and whether any valid exceptions to the privilege existed. *Id*. at *10.

In so doing, the *Stewart* Court cited three decisions where courts had "allowed for review by a government privilege team" and later "opined, in retrospect, that the use of other methods of review would have been better." *Id*. at *6, *citing United States v. Skeddle*, 989 F. Supp. 980, 896-97 (N.D. Ohio 1997) ("by hindsight, a safer course would have been to have given notice to . . . the lawyers whose offices were searched to show cause within a specific period why the materials should not be released to the government"); *United States v. Hunter*, 13 F. Supp. 2d 574, 583 n.2 (D. Vt. 1998) ("It may have been preferable for the screening of potentially privileged records to be left not to a prosecutor behind a "Chinese Wall," but to a Special Master or the magistrate judge"); *United States v. Neill*, 952 F. Supp. 834, 841 n.14 (D.D.C. 1997) (indicating that "the more traditional alternative[]" is to "submit[] disputed documents under seal for *in camera* review by a neutral and detached magistrate or by court-appointed special masters") (collecting cases where *in camera* review was utilized).

In this case, during discussions between the prosecutor and counsel undersigned on August 8, 2018, the government proposed allowing its agents to pour through the seized materials. Another prosecutor from the U.S. Attorney's Office for the Western District of Texas-El Paso Division, would determine what

was privileged and what was not.   This proposed procedure is unacceptable. Though the defense does not doubt that the prosecutors will take their ethical obligations very seriously, the idea of another prosecutor (in the *same* office, no less) serving as the "filter" does little to assuage the legitimate concerns of attorney-defendants and their clients regarding whether the attorney-client privilege and work-product doctrine will remain sacred.   This concern is particularly heightened where, as here, an attorney-defendant represents clients in pending criminal matters.

The government's proposed course of action inherently invades these privileges because the use of a "taint team" does not prevent the government from reviewing attorney-client privileged documents—it merely "changes the identity of the government attorneys and agents who first review that information."  *See* Loren Weiss & Gregory S. Osborne, *Taint Teams and the Attorney-Client Privilege*, American Bar Association (Dec. 2015) (internal citations omitted).  Indeed, such practices have been called into question because government agents and investigators cannot realistically be expected to ignore material simply because it was not responsive to a search warrant or contained privileged material:

> Government attorneys and investigators serving on the Taint Team cannot reasonably be expected to ignore evidence of other crimes they may find in reviewing a criminal defendant's privileged documents.   The conscious knowledge of other crimes could lead

investigators to unconsciously alter the course of the investigation and prosecution for other criminal matters.

*Id*. at 5; *see also In re Grand Jury Subpoenas 04-124-03 and 04-124-05,* 454 F.3d 511, 523 (6th Cir. 2006) (in directing that special master be appointed, district court discussed the "inevitable" risks taint teams present to privilege and pointed out that they have been "implicated in the past in leaks of confidential information to prosecutors").

Courts have found it particularly necessary to protect privileged materials seized from law firms and lawyers in a manner that is "not only . . . fair but also appear[s] to be fair." *Stewart*, 2002 WL 1300059 at *8. This is because "the appearance of fairness helps to protect the public confidence in the administration of justice and the willingness of clients to consult with their attorneys." *Id.* If the government is permitted to raid law firms and then decide for itself which documents are privileged, it would significantly diminish the "public's confidence in the administration of justice and the willingness of clients to consult with their attorneys." *Id.*; *Neill*, 952 F. Supp. at 834 n.14 ("There is no doubt that, at the very least, the 'taint team' procedures create an appearance of unfairness."). Such concerns are certainly heightened in the instant case, where media coverage will be ubiquitous. And given the dramatic approach the government took in commencing this case—which included arresting Mr. Gallego outside a public courthouse during a multi-day trial, ramming down the door of his office during business

hours and detaining his staff member at gunpoint, as well as issuing a press release to the media to drum up attention for the case—it is quite frankly in the government's *own* interests to have a Special Master appointed to maintain at least an appearance of fairness.

There is ample authority and precedent for allowing Mr. Gallego's defense counsel to review the seized materials for privileged documents or, in the alternative, appointing a Special Master such procedure.  In fact, some courts have even ordered the complete return of documents seized from law offices.  For instance, the District Court of Kansas has ordered the government to return documents seized from an attorney, pursuant Fed. R. Crim. P. 41, to protect the attorney-client privilege, concluding:

> [A]n invasion of the attorney-client privilege through a search and seizure generates and injury to the possessor of the privilege—in this case the movants. . . The seizure of materials protected by the attorney-client privilege in this case gives rise to irreparable injury to the movants. The basis of the attorney-client privilege is to protect confidential communications between client and attorney.  If the privileged communications materials are permitted to remain in the hands of the government it is apparent to the court that any confidentiality of the communication involved may well be lost, and the movants will be effectively denied the protection of the privilege.  Once lost, confidentiality cannot be restored.

*In re Matter of 636 S. 66th Terrance*, 835 F. Supp. 1304, 1306 (D. Kan. 1993). Similarly, the Third Circuit affirmed a decision to return files seized from a law

office pursuant to a search warrant, concluding that the government "completely disregarded any concept of the attorney-client privilege" because the files it "searched for and seized pursuant to the warrants constituted the existing records for an entire law practice." *Klitzman*, 744 F.2d at 961.

The same is true here. As in *Stewart*, files and communications belonging to a number of clients—many of which are not responsive to or in any way relevant to the categories of evidence identified in the warrant—have been seized by the government. Indeed, agents seized entire computer towers filled with case files, new and old, from Mr. Gallego's law office. *See Stewart*, 2002 WL 1300059 at *7 ("the computer materials seized are likely to contain a broad range of files and information that are not in any way responsive to the warrant"). As noted above, the computers also likely contain highly personal communications between Mr. Gallego and his family and other private records not germane to this case. Suffice it to say that much of this information is privileged and most, if not all, is completely outside the scope of this investigation.

Given the sensitivity of the materials seized and the high-profile nature of this case, the most prudent course of action is to either allow counsel undersigned's law firm to handle the review and production of documents or to appoint a Special Master. Such an appointment has recently been successfully employed in the Michael Cohen-Donald Trump criminal investigation and would ensure fairness,

respect for the attorney-client privilege, and "protect the public's confidence in the administration of justice and the willingness of clients to consult with their attorneys." *Stewart*, 2002 WL 1300059 at \*8.

## B. The USAM Also Supports Appointing a Special Master

The USAM sets forth special considerations to be employed when a search is executed upon a lawyer and/or a law firm. The policies contained in the USAM support the conclusion that the search warrant was unnecessary here, let alone the use of a tactical team. A simple subpoena would have sufficed. The USAM also provides support for the appointment of a Special Master.

The USAM states that in situations where, as here, a search necessitates collecting an attorney's client files, a "judicial officer" or "special master" should conduct the document review. USAM § 9-13.400. Because of the "potential effects of this type of search on legitimate attorney-client relationships," the USAM supports Mr. Gallego's motion for appointment Special Master in this case. *Id.* Mr. Gallego's defense attorneys are in the best position to review the documents for responsiveness and privilege, but Mr. Gallego is absolutely comfortable with an independent Special Master—and ***not*** the government itself— reviewing the seized materials instead.

Therefore, under these exceptional circumstances, the facts presented, the sensitive nature of the seized documents, and the sheer amounts of privileged

materials contained therein, a TRO is necessary to enjoin the government from sifting through the materials until this Court has ruled on this motion.

### C. The Government Seized Unrelated Active Case Materials

As discussed above, the government seized numerous computers and hard drives from Mr. Gallego's office. Many of those files stored thereupon must be returned to him so he can continue to represent these clients. Mr. Gallego owes an affirmative duty to his clients—a duty he takes extremely seriously—to represent them ethically and effectively. Those clients, in turn, have a constitutional right to competent representation by Mr. Gallego. Thus, because the government seized electronic records which contain numerous electronic records pertaining to untold numbers of pending, active criminal cases, it has a duty to return those peripherals to Mr. Gallego as quickly as possible to ensure no further damage is done to Mr. Gallego's representation of his clients in other, unrelated cases. The appointment of a Special Master in this case will further facilitate resolving these issues quickly and expeditiously.

## IV.   CONCLUSION

Based on the foregoing, this emergency motion should be granted. This Court should *immediately* issue a TRO enjoining the government from inspecting the seized materials in this case. If this Court is disinclined to allow counsel undersigned's law firm conduct the review for privilege and responsiveness, this

1  Court should appoint a Special Master to determine what materials are privileged

2
3  and/or subject to the attorney-work product doctrine.

4       RESPECTFULLY SUBMITTED this 9th day of August, 2018.

5

6
                              Law Office of
7                             HERNANDEZ & HAMILTON, PC

8

9
                              */s/Joshua F. Hamilton*
10                            JOSHUA F. HAMILTON
                              Attorney for Defendant
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>CERTIFICATE OF SERVICE</u>

I, Joshua F. Hamilton, hereby certify that on this 9th day of August, 2018, I electronically transmitted the forgoing documents to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing was sent to:

The Honorable Rosemary Marquez
United States District Court

The Honorable Bernardo P. Velasco
United States District Court

Daphne Newaz, Special Assistant
United States Attorney's Office

Stephen Portell
Attorney for Defendant Ricardo Gallego

Clay Hernandez
Attorney for Defendant Rafael Gallego

Joshua F. Hamilton
Attorney for Defendant Rafael Gallego

By s/*Joshua F. Hamilton*
    JOSHUA F. HAMILTON